UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
 _____
|                                |
| UNITED STATES OF AMERICA,      |
|                                |
|                   Plaintiff,   |
|                                |
| -against-                      |
|                                |
| STEPHEN MURPHY,                |
|                                |
|                   Defendant.   |
|_____|
```

25-CR-218 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Stephen Murphy's motion to suppress evidence derived from a seizure and search of Defendant's cellphone.[1]  For the foregoing reasons, Defendant's motion is DENIED.

## BACKGROUND

The charges against Defendant arise from an alleged scheme to defraud the New York State Workers' Compensation Board.  As alleged by the Government, Defendant falsified or exaggerated various injuries purportedly sustained in connection with Defendant's work as a corrections officer for the Rikers Island Correctional

---

[1] See Defendant's Memorandum of Law in Support of Motion to Suppress (Dkt. 30 at 5-11 ("Def Mot.")); Declaration of Douglas Rankin in Support of Pretrial Motions (Dkt. 30 at 2-4 (Rankin Decl.")); Government's Memorandum of Law In Opposition to Defendant's Motion to Suppress (Dkt. 38 ("Gov. Opp.")).  A redacted version of the warrant and affidavit was produced by the Government and filed by Defendant at Dkt. 30-1. The Government subsequently unredacted additional portions of the affidavit, which were filed at Dkt. 38-1.  Where portions of the affidavit and warrant lack paragraph numbers, the Court refers to Bates-stamped page numbers.

Facility.    (Gov. Opp. 5.)    The operative three-count indictment charges Defendant with (i) healthcare fraud, in violation of 18 U.S.C. § 1347; (ii) mail fraud, in violation of 18 U.S.C. § 1341; and (iii) false statements relating to healthcare matters, in violation of 18 U.S.C. § 1035(a)(2).

As part of the Government's investigation, the Government seized Defendant's cellphone pursuant to a warrant issued on July 12, 2024 (the "Warrant") by Magistrate Judge Joseph Marutollo of the U.S. District Court for the Eastern District of New York.    The Warrant authorized the Government to search the seized electronic data, within certain specified parameters, for evidence of (i) wire fraud, in violation of 18 U.S.C. § 1343; (ii) healthcare fraud, in violation of 18 U.S.C. § 1347; (iii) conspiracy to commit wire fraud and healthcare fraud, in violation of 18 U.S.C § 1349; and (iv) making false statements relating to health care matters, in violation of 18 U.S.C. § 1035 (the "Subject Offenses"). (Warrant at USAO_006273.)

In support of the Warrant, the Government submitted a sworn affidavit from USAO Special Agent Aaron Greenberg (the "Affidavit") outlining the probable cause to seize and search Defendant's phone.  The Affidavit stated that Defendant had filed seven separate worker's compensation claims for purported injuries incurred as a corrections officer.  (Aff. ¶¶ 41-47.)  The Affidavit also catalogued representations that Defendant made to various

medical examiners that were reflected in medical examiners' reports.  For example, Defendant claimed in October of 2021 that he did not perform exercise or physical activities outside of the home.  (Id. ¶ 45.)  In February of 2023, Defendant told another examiner that pain in his knee and foot created "difficulty with daily activities including standing, walking, going up and down stairs, and bending."  (Id. ¶ 47.)  And in April of 2023, Defendant reportedly told another examiner that Defendant was "unable or limited in his abilities to engage in sports activities, shopping, or running errands."  (Id.)

The Affidavit then summarized evidence indicating that Defendant's representations were false or misleading.  That evidence included footage that the Government obtained from a pole camera near Defendant's home mere months after Defendant's February and April 2023 examinations:

> Throughout July and August 2023, a pole camera positioned in proximity to MURPHY's residence captured him engaging in physical activities that appear inconsistent with his multiple purported injuries and claims of permanent loss of use described above, including his mounting a motorcycle, carrying a basketball hoop, carrying a folding table, carrying a pop-up tent, lifting and disposing of large section of fence, doing approximately eight pull-ups on one occasion, doing approximately 27 pull-ups on another occasion, carrying lumber, lifting and rotating a motorcycle, and participating in full basketball games with running, jumping, and crouching, among other physical actions.

(Id. ¶ 49.)

In addition to the pole camera footage, the Affidavit described other indicia of fraudulent claims.  For example, in October of 2021, approximately two weeks after Defendant stated that he did no exercise or physical activity outside his home, Defendant joined the New York Police Department, (id. ¶ 48), which the Affidavit elsewhere noted was a "physically demanding job," (id. ¶ 14).[2]  Separately, the Affidavit states that in June of 2022, Defendant claimed to a medical examiner that Defendant had not experienced neck or back pain prior to his purported injury. Yet prior to that examination, Defendant told a different medical examiner that he had experienced "sharp and achy" pain that "radiated toward his back."  (Id. ¶ 41.)

Finally, the Affidavit set forth the probable cause to believe that Defendant's cellphone was likely to contain evidence, fruits, and instrumentalities of the Subject Offenses.  The Affidavit noted that, based on Special Agent Greenberg's training and experience investigating these types of offenses, cellphones would typically contain "information about the users' daily lives and routines— including in communications with loved ones or friends about whether they go to the gym, play sports, run, drive, go to stores to purchase (and thus carry) heavy objects, and also contain

---

[2] For example, the Affidavit noted that the NYPD standard applicant test includes a victim rescue simulation in which candidates are required to pull a 180 pound object for 35 feet.  (Dkt. 38-1 at 5.)

communications and other information about whether the user felt pain while engaging in such activities." (Aff. ¶ 69.) The Affidavit further explained that the cellphone could contain documentary evidence of Defendant's alleged fraudulent scheme, including communications with co-conspirators or fraudulent documents generated in connection with the scheme, which could remain on Defendant's cellphone months or years after the criminal conduct occurred. (Id. ¶ 71.)

## LEGAL STANDARD

"Probable cause is 'not a high bar.'" D.C. v. Wesby, 583 U.S. 48, 57 (2018) (citation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Accordingly, "[c]ourts conducting an after-the-fact review of a judicial officer's decision to issue a warrant based on probable cause pay great deference to the issuing judge's determination of probable cause." United States v. Snape, 116 F. App'x 317, 319 (2d Cir. 2004).

A "search or seizure pursuant to a warrant is presumed valid." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003).

However, under Franks v. Delaware, 438 U.S. 154 (1978) and its progeny, a defendant may challenge the truthfulness of factual statements made in a warrant application to undermine the validity of the warrant and resulting search or seizure.  In order to warrant a Franks hearing, a defendant bears the burden to make a "a substantial preliminary showing" that (1) "a false statement . . . was included by the affiant in the warrant affidavit," (2) "the affiant made the allegedly false statement knowingly and intentionally, or with reckless disregard for the truth," and (3) "the allegedly false statement [was] necessary to the finding of probable cause."  United States v. Sandalo, 70 F.4th 77, 85 (2d Cir. 2023).  The Court of Appeals has emphasized that the burden imposed by the "substantial preliminary showing" standard is a "heavy one," id. at 86, consistent with "the Supreme Court's concern that permitting a hearing that impugns the veracity of statements included in a search warrant affidavit without a 'sensible threshold showing' could lead to a 'new large-scale commitment of judicial resources' and the 'misuse of veracity hearings' for purposes of discovery or obstruction," id. at 85 (quoting Franks, 438 U.S. at 170).

6

## DISCUSSION

### A. Probable Cause

i)    Subject Offenses

Defendant argues that the Affidavit fails to set forth probable cause that Defendant engaged in the Subject Offenses. The Court disagrees.  A warrant application need only show "a probability or substantial chance of criminal activity, not an actual showing of such activity."  United States v. Silva, 146 F.4th 183, 189 (2d Cir. 2025).  Here, the Affidavit catalogued numerous inconsistencies between the representations Defendant made to medical examiners and Defendant's observed physical activities.  The pole camera footage, coupled with the fact that Defendant joined the NYPD mere weeks after claiming he was unable to physically exercise outside of the home, is more than sufficient to show probable cause that Defendant engaged in the Subject Offenses.  While Defendant attempts to explain away these inconsistencies, (Rankin Decl. ¶ 6), those arguments are for a jury and have no relevance at the suppression stage.

ii)   Nexus

Defendant, in a single sentence, also offers what the Court construes as a nexus challenge.  (Rankin Decl. ¶ 5.)  As a threshold matter, the Court finds that this "perfunctory, undeveloped argument [is] forfeited."  United States v. Stegemann, 701 F. App'x 35, 38 (2d Cir. 2017) (affirming district court's decision to

decline to consider defendant's challenge to aerial surveillance made in two conclusory sentences).

Even if the Court were to consider the merits of Defendant's conclusory nexus challenge, the Affidavit nonetheless satisfies the nexus requirement.  While a warrant application must of course identify a nexus between the criminal activities alleged and the place to be searched, "[a] showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience."  United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004).  In the context of cellphones specifically, a warrant affidavit need not outline evidence showing that the cellphone was in fact used in furtherance of criminal conduct.  Rather, the affidavit need only identify "probable cause that the [phone] to be searched contains relevant evidence of the criminal conduct."  Silva, 146 F.4th at 190.

The Government's Affidavit does so here.  As Special Agent Greenberg noted in the Affidavit, cell phones often contain evidence of healthcare benefits fraud schemes, including evidence of the defendant's day-to-day movements and physical activities. The Affidavit also set forth specific evidence that Defendant had engaged in particular physical activities, such as riding a motorcycle and playing basketball.  It is entirely reasonable to assume that relevant evidence of these activities (such as photographs or text messages) could be found on Defendant's

cellphone, in addition to communications or documents regarding the fraudulent claims that Defendant allegedly submitted.  Taken together, the Affidavit "identified particular attributes of the alleged criminal conduct that, in combination with the affiant's asserted expertise with similar activities, supported a reasonable inference that [Defendant's] cell phone would contain relevant evidence."  Silva, 146 F.4th at 186.  Defendant's nexus challenge thus fails independently on the merits.

### B. __Franks__ Challenge

Defendant also argues that the Affidavit's discussion of pole camera footage contains a material misstatement warranting a Franks hearing.  (Rankin Decl. ¶ 6.)  Specifically, Defendant claims that the Affidavit's description of camera-documented activities that "appear inconsistent with his multiple purported injuries and claims of permanent loss of use described above", (Aff. ¶ 49), falsely suggested to Judge Marutollo that Defendant had claimed total loss of use of the body parts at issue, rather than only partial loss of use.

To warrant a Franks hearing on this issue, Defendant must (i) "make a substantial preliminary showing that the Government deliberately or recklessly misrepresented facts to Judge [Marutollo];" and (ii) "make a substantial preliminary showing that Judge [Marutollo] would have denied the Government's application absent any such misrepresentation."  United States v.

9

Maxwell, 545 F. Supp. 3d 72, 83 (S.D.N.Y. 2021).   Defendant's
argument fails on all prongs.

    i)    Falsity

Off the bat, the Court disagrees with Defendant that the
Affidavit contains any misstatement at all.   As the Affidavit
previously explained, the reference to "permanent loss of use" is
a technical term of reference that describes the duration of
injuries, not the extent:

> Injuries are classified as either temporary or
> permanent, and as either partial or total.  One type
> of benefit that an injured worker may receive is a
> Scheduled Loss of Use award (or "SLU"), which is
> intended to compensate the worker for permanent,
> partial lost use of one or more scheduled body
> parts.   For example, a worker may receive a
> scheduled payment if it is determined that he or she
> lost some use of an arm, or a leg, or a hand; and
> the amount of the payment is determined, in part,
> by a calculation of what percentage use of the body
> part was in fact lost—e.g., 25% lost use of a leg
> would result in a particular payout, whereas 10%
> lost use of a foot would result in a different
> payout.

(Aff. ¶ 15 (emphasis added).) The Affidavit then catalogued how
Defendant was awarded percentage-based scheduled loss of use
payments, which, as the Affidavit explained, are intended to
compensate for partial loss of use.   (Id.)   At no point does the
Affidavit ever state or suggest that Murphy claimed total loss of
use of any body part.   On the contrary, the Affidavit repeatedly

10

stated that the Government's investigation was focused on false claims of partial loss of use.[3]

ii) Materiality

Assuming arguendo that Defendant were correct that the Affidavit contains a misstatement, it was clearly immaterial to the finding of probable cause. "Under Franks, '[t]he ultimate inquiry on a motion to suppress is not whether the affidavit contains false allegations or material omissions, but whether after putting such aside, there remains a residue of independent and lawful information sufficient to support probable cause.'" United States v. Marley, 800 F. App'x 4, 7 (2d Cir. 2020) (quoting United States v. Ferguson, 758 F.2d 843, 849 (2d Cir. 1985)). As part of that inquiry, the Court "correct[s] the affidavit to account for the alleged inaccuracies." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

Here, the paragraph at issue, at worst, omits to specify whether Defendant claimed partial or total permanent loss of use.

------

[3] See, e.g. id. ¶¶ 14 ("This investigation has identified multiple former and current correction officers, including the Target Subjects, who appear to have been engaged in this fraudulent conduct, as evidenced by the fact that, after claiming significant injuries and partial 'loss of use' of certain limbs and body-parts, they then engaged in physical activities that appear to be inconsistent with their claimed injuries")(emphasis added); 69 ("The Target Subjects' workers' compensation claims all required them to make representations about how their injuries caused persistent partial loss of use of specific body parts.")(emphasis added).

If the Court were to correct for this omission, the sentence would state that:

> [A] pole camera positioned in proximity to MURPHY's residence captured him engaging in physical activities that appear inconsistent with his multiple purported injuries and claims of permanent [partial] loss of use described above.

(Aff. ¶ 49.)  Even with that hypothetical correction, the Court finds that the totality of the Affidavit more than satisfies probable cause.  Defendant thus fails his burden to identify any material misstatement, let alone one that was made with reckless disregard for the truth.

### C. Good Faith

Finally, assuming that Defendant's probable cause or Franks challenges had any merit, which they do not, the Court would decline to order suppression pursuant to the good faith exception. Suppression is a judge-made remedy that should only be ordered if it could reasonably deter the alleged violation.  Thus, "[e]vidence obtained by officers in objectively reasonable reliance on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion."  United States v. Raymonda, 780 F.3d 105, 118 (2d Cir. 2015).   "A court should exclude evidence from a warrant only where law enforcement 'exhibit[s] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'"  United States v. Rinsch, 807 F. Supp. 3d 238, 246-47

(S.D.N.Y. 2025) (quoting Raymonda, 780 F.3d at 117-18).  The good faith exception therefore applies unless "(1) the issuing magistrate has been knowingly misled; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the application for a warrant was so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant is so facially deficient that reliance upon it is unreasonable."  Id.  None of these circumstances apply here.  Accordingly, the good faith exception would independently preclude suppression.

## CONCLUSION

For the foregoing reasons, Defendant's suppression motion is DENIED on the papers.  The parties shall appear at the June 8 conference and be prepared to set a trial date in the Fall of 2026.

The Clerk of Court shall close Dkts. 29 and 30.

**SO ORDERED.**

Dated:    New York, New York
          May 22, 2026

_____
LORETTA A. PRESKA
Senior United States District Judge

13